UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SMITH,

                                    Plaintiff,

        -against-

FIRST UNUM LIFE INSURANCE, PRESITGE
EMPLOYEE ADMINISTRATORS, INC.,

                                    Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/21/2020
```

No. 19 Civ. 00298 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff David J. Smith ("Smith" or "Plaintiff") initiated this action against First Unum

Life Insurance Company ("Unum") and Prestige Employee Administrators II Inc. ("Prestige")

alleging violations of the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (*See* Complaint ("Compl."), ECF No. 1.)  Before the Court

is Plaintiff's motion for an order compelling discovery pursuant to Rule 37 of the Federal Rules

of Civil Procedure (the "Motion to Compel").  (Motion to Compel Discovery, ECF No. 30.)  For

the following reasons, Plaintiff's Motion to Compel is DENIED in part and GRANTED in part.

## I.        BACKGROUND

        This case arises from Unum's denial of Plaintiff's long-term disability ("LTD") claim

and Prestige's advice to Plaintiff regarding how to proceed with submitting his LTD claim.  (*See*

Compl.)  Plaintiff was hired on May 31, 2010 by MHR Fund Management LLC ("MHR") as a

driver.  (*Id.* ¶ 7.)  During his tenure, on August 6, 2016, Plaintiff suffered work-related crush

injuries (the "2016 Injury") when he was pinned between two cars while unloading items from

the back of his car.  (*Id.* ¶¶ 11-12.)  Over the next six months, Plaintiff continuously reported to

work except for approximately 17 days in August and December.  (*Id.* ¶¶ 14-17.)  Subsequently,

on January 25, 2017, Plaintiff had an operation to treat conditions that had developed in his thigh

and remained out of work until September 5, 2017.  (*Id.* ¶¶18-22.)  During that time, Plaintiff's

health further deteriorated, and he had another surgery on July 10, 2017.  (*Id.* ¶ 20-21.)  Plaintiff

then returned to work between September 6, 2017 and October 31, 2017.  (*Id.* ¶ 24.)  Beginning

on November 1, 2017, Plaintiff could not (and did not) return to work.  (*Id.* ¶ 26.)  Though, by

his own admission, Plaintiff did not perform material and substantial duties of his regular

occupation after October 31, 2017, Plaintiff continued to receive his base salary from MHR in

the amount of $4,038.47 per bi-weekly pay period until May 11, 2018.  (Compl. ¶ 27; Brief of

First Unum Life Insurance Company in Opposition to Plaintiff's Motion to Compel Discovery

("Unum Opp."), ECF No. 34, at 4.)  During his employment with MHR, Plaintiff was enrolled in

a group LTD policy in which Unum was both the claim administrator and payor.  (*See* Unum Ex.

A ("Unum Policy"), ECF No. 34-2; Unum Opp. 6; Compl. ¶ 9.)

On May 24, 2018, Plaintiff filed his claim for LTD benefits with Unum.  (Compl. ¶ 39.)

By letter dated June 28, 2018, Unum denied Plaintiff's claim because it concluded that Plaintiff's

submission was not timely under the terms of the Unum Policy.  (Unum Ex. B ("June Letter"),

ECF No. 34-3, at FUL-CL-LTD-000215.)  Unum does not seem to contest the existence of

Plaintiff's disability.  Instead, Unum's only basis for denying LTD benefits is that Plaintiff

purportedly failed to submit a proof of claim within one-year of his date of disability pursuant to

the terms of the Unum Policy.  (*See* June Letter.)

Under the terms of Unum Policy, Plaintiff was required to submit his LTD claim by

sending "Unum proof of [his] claim **no later than one year after the date [his] disability

beg[an]** unless [he] prove[d] that it was not possible to do so."  (Unum Policy at FUL-POL-

LTD-000007 (emphasis added).)  The Unum Policy defines "disability," in part, as (1) being

"limited from performing the material and substantial duties of your regular occupation due to

2

your sickness or injury; **_and_**" (2) having "a 20% or more loss in your indexed monthly earning due to the same sickness or injury." (*Id.* at FUL-POL-LTD-000016 (emphasis added).) The meaning of this provision is guided by defined subsidiary terms which inform the calculation of the date of disability.

"**Material and Substantial Duties**" is a defined term meaning duties that "are normally required for the performance of your regular occupation; **_and_**" "cannot be reasonably omitted or modified." (*Id.* at FUL-POL-LTD-000043 (emphasis added).)

"**Monthly Earnings**" is also a defined term meaning an individual's "gross monthly income from [his or her] Employer in effect just prior to [his or her] date of disability" and it "includes income actually received from bonuses." (*Id.* at FUL-POL-LTD-000018.) Bonuses "will be averaged for the lesser of" "the prior calendar year's 12 month period of your employment with your Employer just prior to the date of disability begins; or" "the period of actual employment with your Employer." (*Id.*)

In order to receive LTD benefits, one "must be continuously disabled through [his or her] elimination period. Unum will treat [the] disability as continuous if [the] disability stops for 30 days or less during the elimination period. The days that [the employee is] not disabled will not count toward [the] elimination period." (*Id.* at FUL-POL-LTD-000016.) The operative elimination period in the Unum Policy is 90 days. (*Id.*)

In the June Letter, Unum concluded that Plaintiff's date of disability was January 25, 2017, and that Plaintiff was required to submit his proof of loss on or before January 25, 2018. (*See* June Letter at FUL-CL-LTD-000215.) Accordingly, Plaintiff's submission of a proof of loss on May 24, 2018 was tardy by approximately four months. (*Id.*) The June Letter does not explain how Unum determined that January 25, 2017 was the first date that Plaintiff was "limited

3

from performing the material and substantial duties of [his] regular occupation due to [his] sickness or injury." (*Id.*)  The June Letter also does not describe in detail how it determined that Plaintiff's monthly earnings decreased by 20 percent.  Instead, it notes that, while Plaintiff contended he "did not believe [he] could file a claim because [he] had been receiving full pay up until the date of [his] termination of employment as of May 11, 2018," Unum had concluded that "it was reasonably possible [Plaintiff] could have filed your claim within a year of [his] date of disability." (*Id.*)

After receiving this letter, on August 31, 2018, Plaintiff appealed Unum's denial of LTD benefits determination memorialized in the June Letter.  (Compl. ¶ 49.)  Among other things, Plaintiff contended that Unum's determination of Plaintiff's "date of disability" was arbitrary, capricious, and disregarded Plaintiff's continued receipt of full regular salary from MHR through May 11, 2018.  (*Id.*)  Unum initially responded by providing "new information and/or rationale developed on [the] appeal" explaining why it denied Plaintiff's LTD claim, before subsequently issuing a letter confirming its denial of LTD benefits and further describing its basis for denying those benefits on October 22, 2018.  (*Id.* ¶¶50-51; Unum Ex. C ("October Letter"), ECF No. 34-4.)

In the October Letter, Unum explained that January 25, 2017 was Plaintiff's date of disability based on his inability to perform job duties and loss of monthly earnings.  First, Unum concluded that Plaintiff incurred a loss of pre-disability monthly earnings of at least 20 percent beginning on January 25, 2017, such that January 25, 2017 was the proper date of disability. (October Letter at FUL-CL-LTD-000339.)  In support of this conclusion, Unum noted that in 2016, Plaintiff received a bonus of $35,000, and a base annual salary of $105,000.22, whereas, in 2017, Plaintiff did not receive a bonus and was paid the same base annual salary of $105,000.22.

(*Id.* at FUL-CL-LTD-000341.)  Thus, if Plaintiff's 2016 bonus was prorated on a monthly basis across the preceding year, then Plaintiff's gross monthly earnings for 2016 was $11,666.69, whereas, Plaintiff's monthly earnings for 2017 (when he did not receive a bonus) was $8,750.01. (*Id.* at FUL-CL-LTD-000341.)  This reduction of $3,000 in average monthly earnings exceeds 20 percent of his average monthly earnings in 2016.

Second, Unum concluded that Plaintiff would not have satisfied the Elimination Period required to trigger his entitlement to disability benefits prior to January 25, 2017 because, prior to that date, "Mr. Smith returned to work on a full-time basis for greater than 30 days following absences in August and December 2016."  (*Id.* at FUL-CL-LTD-000340.)  Whereas, "Mr. Smith stopped working beginning January 25, 2017, and remained out of work for well over 90 days (satisfying the elimination period)."  (*Id.*)

Following the October Letter, on January 10, 2019, Plaintiff filed its Complaint in the United States District Court for the Southern District of New York.  (Compl.)  In his Complaint, Plaintiff asserts two causes of action against Unum, *i.e.*, violation of ERISA and a request for attorneys' fees and costs under ERISA, 29 U.S.C. 1132(g)(1).  (*Id.* ¶¶ 59-75.)  These causes of action are based upon Plaintiff's allegation that Unum's denial of benefits decision was arbitrary, capricious, erroneous, and motivated by Unum's bias and self-interest.  (*Id.* ¶¶ 67-69.)  Unum filed its Answer on May 22, 2019.  (Answer of Defendant First Unum Life Insurance Company, ECF No. 23.)

After initial pleadings were filed, the parties engaged in discovery.  On June 28, 2019, Plaintiff served his First Requests for Production to Defendant First Unum Life Insurance Company seeking twelve categories of documents:

(1) "Lists of all training relative to the claims handling, administration and/or appeals of long-term disability insurance [] claims that Unum provided to [three Unum employees responsible for handling his claim];

(2) "All training materials used in training [three Unum employees responsible for handling his claim];"

(3) All "Written Unum standards, policies, procedures, criteria, training materials, practice aids, examples, interpretations, guidelines and available reference material . . . concerning the handling, submission and/or administration of LTD claims or administrative appeal, that were in effect in 2016, 2017 or 2018. . . ."

(4) "Any documents concerning [Unum's performance or results-based financial incentives or bonuses] that are or were applicable to those handling or administering LTD claims and administrative appeals during the period from January 1, 2015 to date."

(5) "Documents pertaining to performance based financial incentives or bonuses that Unum paid to [three Unum employees that denied Plaintiff's claim]."

(6) "Performance evaluations of [the three Unum employees that denied Plaintiff's claim] from 2013 to date."

(7) Any documents concerning "Financial penalties imposed by Unum on LTD claim decision makers for inaccurate decision making" "in effect from January 1, 2015 to date."

(8) A list of documents showing the case name, court and docket numbers of all cases "involving LTD claims in which it was alleged that [any of the three employees that denied Plaintiff's claim] rendered inaccurate, improper and/or biased decisions."

(9) Documents that show or include "the approval/termination rates on LTD claims handled or administered by [the three Unum employees that denied Plaintiff's claim]."

(10) "The resumes of [the three Unum employees that denied Plaintiff's claim]."

(11) All communications between Unum and MHR Fund Management, LLC or Prestige Employee Administrators, Inc. or any of their employees or agents concerning the Plaintiff [besides those that are already in the claims and appeals files]."

(12) "Documents pertaining to any steps that Unum may have taken to reduce potential bias and/or to promote accuracy on the part of its decision makers on LTD claims."

(Smith Ex. 5 ("Smith RFP"), ECF No. 35-5, at 4-5.)  On June 28, 2019, Unum served three deposition notices upon Unum, seeking to depose three Unum employees that were allegedly responsible for denying his LTD claim, *i.e.*, Lisa J. Hyde, Sharon Labonte, and Kurt Phillips (collectively the "Unum Decision Makers").  (Smith Ex. 7 ("Smith Deposition Notices"), ECF No. 35-7.)

In response to the Smith RFP, Unum agreed to produce a "Benefits Center Claims Manual in effect on May 24, 2019 . . . and all changes up to and including October 29, 2018," and otherwise stood on its objections to not produce additional material.  (*See* Smith Ex. 6, ECF No. 35-6.)  In response to the Smith Deposition Notices, Unum objected to the depositions of its employees and stated that it would not produce the witnesses without further direction from the Court.  (Unum Ex. D, ECF No. 34-5.)  On September 26, 2019, during an Initial Pretrial Conference, the Court granted Plaintiff leave to file a motion seeking discovery from Unum.  On October 28, 2019, Plaintiff filed his Notice of Motion to Compel Discovery, ECF No. 30, and served his Memorandum of Law in Support of his Motion to Compel Discovery ("Smith Mem."), ECF No. 31-9.[1]  On December 12, 2019, Unum served its Opposition to Plaintiff's Motion to Compel, ECF No. 34.  Finally, on January 2, 2020, Plaintiff served and filed his Memorandum of Law in Reply to Defendant's Opposition to Plaintiff's Motion to Compel Discovery ("Smith Reply"), ECF No. 36.

This opinion follows.

---

[1]     Plaintiff's exhibits supporting his Motion to Compel were refiled at ECF Nos. 35 & 35-1-7.

## II.   DISCUSSION

### A.  Legal Principles Governing Discovery in ERISA Benefits Cases

In reaching a decision on the *merits* of an ERISA claim dispute "district courts typically limit their review to the administrative record before the plan at the time it denied the claim." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016) (citing *DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 66–67 (2d Cir.1997); *accord Muller v. First Unum Life Ins. Co.,* 341 F.3d 119, 125 (2d Cir. 2003).  In an ERISA case applying the arbitrary and capricious standard to review the administrative determination (the standard that Unum contends is applicable in this case), "the presumption is that review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence."  *Muller*, 341 F.3d at 125; *see Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) ("We have repeatedly said that a district court's decision to admit evidence outside the administrative record is discretionary, 'but which discretion ought not to be exercised in the absence of good cause.'") (quoting *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 289 (2d Cir. 2000)); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).  "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice*, 112 F.3d at 67.

The Second Circuit has not provided district courts with a detailed framework for deciding disputes over the *discoverability* of extra-record evidence in ERISA cases.  Most district courts apply the "reasonable chance" standard first articulated in *Anderson v. Sotheby's Inc. Severance Plan*:

> Plaintiff need not make the thorough showing of good cause that he must make later before [the trial judge]. However, he must show a reasonable chance that the

> requested discovery will satisfy the good cause requirement. Otherwise, he could indulge in fishing expeditions by summarily stating that any requested discovery might help to show good cause.

No. 04 Civ. 8180 (SAS), 2005 WL 6567123, at *7 (S.D.N.Y. May 13, 2005); *see, e.g.*, *Capretta v. Prudential Ins. Co. of Am.*, No. 16 Civ. 1929 (DAB), 2017 WL 4012058, at *6 (S.D.N.Y. Aug. 28, 2017) ("In order to take discovery outside of the administrative record, a plaintiff challenging a claims decision must show that there is 'a reasonable chance that the requested discovery will satisfy the good cause requirement.'") (quoting *Shelton v. Prudential Ins. Co. of Am.*, No. 16 Civ. 1559 (VEC), 2016 WL 3198312, at *2 (S.D.N.Y. June 8, 2016)); *Aitken v. Aetna Life Ins. Co.*, No. 16 Civ. 4606 (PGG), 2017 WL 455547, at *2 (S.D.N.Y. Jan. 19, 2017); *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 397 (S.D.N.Y. 2012); *Hamill v. Prudential Ins. Co. of Am.*, No. 11 Civ. 1464 (SLT), 2012 WL 6757211, at *10 (E.D.N.Y. Sept. 28, 2012); *Quinones v. First Unum Life Ins. Co.*, No. 10 Civ. 8444 (SAS), 2011 WL 797456, at *2 (S.D.N.Y. Mar. 4, 2011); *Baird v. Prudential Ins. Co. of Am.*, No. 09 Civ. 7898 (PGG), 2010 WL 3743839, at *9 (S.D.N.Y. Sept. 24, 2010), aff'd, 458 Fed. Appx. 39 (2d Cir. 2012); *Pretty v. Prudential Ins. Co. of America*, 696 F. Supp. 2d 170, 182 (D. Conn. 2010); *Yasinoski v. Ct. Gen. Life Ins. Co.*, No. 07 Civ. 2573, 2009 WL 3254929 (RRM) (AKT), at *5 (E.D.N.Y. Sep. 30, 2009).

On the other hand, several courts have expressed skepticism with this judicially invented standard for obtaining discovery in ERISA cases. For example, in *Liyan He v. Cigna Life Ins. Co. of New York*, the magistrate judge concluded that the "use of this phrasing[, *i.e.*, 'reasonable chance,'] as a special standard to govern ERISA cases is 'unwarranted.'" 304 F.R.D. 186, 189 (S.D.N.Y. 2015); *see also Joyner v. Cont'l Cas. Co.*, 837 F. Supp. 2d 233, 242 (S.D.N.Y. 2011) ("[T]he Court concludes that it is unwarranted to impose a standard such as a 'reasonable chance' that discovery will lead to 'good cause' at the discovery stage of litigation."). However,

even these skeptical courts have warned that some degree of caution is required when addressing broad discovery requests in ERISA cases.  Among other things, discovery must be limited if "the burden or expense of the proposed discovery outweighs its likely benefit" and district courts must give appropriate weight to the "'significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures'" when resolving discovery disputes in ERISA cases.  *Liyan He*, 304 F.R.D. at 189 (quoting *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004).

At bottom, there is no binding precedent or rule mandating fidelity to the "reasonable chance" standard when determining requests for discovery outside of the scope of the administrative record in ERISA cases.  Nonetheless, in the instant matter, both parties encourage this Court to use the "reasonable chance" standard and this Court concludes that the standard is useful and appropriate insofar as it appropriately balances, on the one hand, the needs of ERISA plaintiffs to obtain discovery in order to make a good cause showing for the introduction of evidence outside of the administrative record with, on the other hand, the significant policy interests of minimizing the cost of claim disputes.

In order to satisfy the "reasonable chance" standard, a plaintiff may not rely upon a bare allegation of the existence of a conflict of interest.  *See, e.g.*, *Quinones*, 2011 WL 797456, at *3 ("It is well-established that the mere appearance of a conflict alone is insufficient to meet the reasonable chance standard."); *Yasinoski*, 2009 WL 3254929, at *11 ("[F]or the court to grant permission to take . . . discovery outside the administrative record, the moving party must show more than a mere allegation of the existence of a conflict of interest."); *Rubino v. Aetna Life Ins. Co.*, No. 07 Civ. 377 (LDW) (AKT), 2009 WL 910747, at *3 (E.D.N.Y. May 31, 2009) ("[A] party seeking to conduct discovery outside the administrative record must allege more than a

10

mere conflict of interest.").  Thus, discovery requests concerning a potential conflict of interest should be denied when a plaintiff fails to allege that a "[d]efendant's conflict actually affected its benefit determination."  *Baird*, 2010 WL 3743839, at *7.

By contrast, limited discovery has been ordered where plaintiffs have demonstrated that, in addition to a structural conflict of interest, there was some factual support for the position that the conflict of interest influenced a claim denial determination within the administrative record. *See, e.g.*, *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 232 (E.D.N.Y. 2008) (granting discovery concerning whether the medical professionals that reviewed plaintiff's claim were conflicted because "the record demonstrates that correspondence between Defendant and the medical professionals may raise questions as to the influence Defendant had on the outcome of these physicians' determinations"); *Allison v. Unum Life Ins. Co.*, No. 04 Civ. 0025 (JSW) (DW), 2005 WL 1457636, at *13 (E.D.N.Y. Feb. 11, 2005) (allowing discovery concerning whether medical vendor was conflicted in rendering disability determination where, based upon the administrative record, "it is not clear whether he operated under a conflict of interest or if such conflict affected his decision").

## B.  Plaintiff's Threshold Showing of a Sufficient Basis for Limited Discovery Concerning Unum's Allegedly Biased Denial of His LTD Claim

In the instant matter, Plaintiff contends that each of his discovery requests was "carefully limited and tailored to the particular issues of this case" and that "[e]ach is relevant to adduce circumstantial evidence, if any, as to the bias of Unum's decision makers."  (Smith Mem. at 13.) As an initial matter, it is uncontested that Unum is both the "claim administrator and party who funds payment of benefits," and accordingly "it operates under a structural conflict of interest." (Unum Opp. At 6.)  Unum correctly observes that "[t]he mere assertion of a conflict of interest alone is insufficient to meet the reasonable chance standard."  (*Id.* at 8.)  Accordingly, the

operative question is whether Plaintiff has asserted a sufficient factual basis, beyond the uncontested fact that Unum is operating under a structural conflict of interest, to justify his requested discovery.

To this end, Plaintiff asserts two bases for discovery. *First*, Plaintiff attempts to clear the initial "reasonable chance" threshold by pointing to historical instances in which Unum was alleged (or found) to have engaged in biased decision making. (Smith Mem. 10-12.) Unum responds that the instances of biased claim determinations referenced by Plaintiff occurred more than 15 years ago, and are thus not relevant to whether its denial of Plaintiff's LTD claim was the result of bias. (Unum Opp. 10-11.) The Court agrees with Unum. Without a showing of a nexus between Unum's historical misconduct (circa 2004) and the determination at issue in this case (in 2018)—*e.g.*, a factual basis to conclude that the Unum Decision Makers were influenced two decades ago to persist in engaging in biased claim denials—allegations regarding Unum's historical misconduct are insufficient to justify discovery beyond the administrative record.

*Second*, Plaintiff contends, in a mostly conclusory fashion, that the Unum Decision Makers were influenced by a conflict of interest based on the alleged self-serving nature of Unum's interpretation of policy terms evidenced in the June Letter and October Letter. For example, Plaintiff contends that "Unum never explained and cannot explain why Plaintiff's last day of work (October 31, 1017 [sic]) was not his 'date of disability.'" (Smith Reply at 4.) Unum, by contrast, argued that the determination of the date of disability was the obvious result of a plain language interpretation of the Unum Policy. (Unum Opp. 5.)

The basis for Unum's determination that January 25, 2017 is Plaintiff's "date of disability" is not described with great clarity in the parties' submissions. It appears that Unum initially provided no specific explanation for how it concluded that January 25, 2017 was the

date of disability in its June Letter.  (*See* June Letter at FUL-CL-LTD-000215 (concluding without explanation that, "[b]ased on the provisions of the policy, your date of disability has been determined to be January 25, 2017.")  Then, after that determination was appealed, Unum explained that the date of disability was January 25, 2017 because that was the first date that Plaintiff "stopped work for an extended period" and that "[t]he Benefits Center determined Mr. Smith would not have satisfied the 90 day Long Term Disability elimination period based on his initial absences [in 2016.]"  (*See* October Letter at FUL-CL-LTD-000340.)

Without reaching the merits of the parties' policy interpretations, and only for the purposes of assessing the need for additional discovery, the Court concludes that there is a sufficient factual basis to justify limited discovery into whether bias influenced Unum's denial of Plaintiff's claim.  The June Letter and October Letter demonstrate that Unum initially failed to explain how it determined Plaintiff's date of disability until Plaintiff later appealed the initial determination.  Unum's approach gives rise to questions concerning whether Unum retro-engineered a self-serving explanation for its appeal decision in October after initially denying his claim in June without explanation.  Based on this irregularity, the Court concludes that there is a reasonable chance that limited discovery would result in Unum's production of extra-record evidence that would be admissible under the "good chance" standard.  *See, e.g.*, *Feltington v. Hartford Life Ins. Co.*, No. 14 Civ. 6616 (ADS) (AKT), 2016 WL 1056568, at *10 (E.D.N.Y. Mar. 15, 2016) ("[P]lausible allegations of 'procedural irregularities' in the administrative review process, considered in conjunction with a structural conflict of interest, may be sufficient to show that a plaintiff has a reasonable chance of success in meeting the good cause standard."); *S.M. v. Oxford Health Plans (NY), Inc.*, No. 12 Civ. 4679 (ER) (JCF), 2014 WL 1303444, at *5 (S.D.N.Y. Apr. 1, 2014) (ordering discovery based on structural conflict of interest and

contention that "Oxford deliberately chose a non-specialist Medical Director and walled him off from pertinent information within Oxford's possession").

Even though the Court finds that some limited discovery is warranted, it still concludes, for reasons explained in greater detail below, that Unum need not produce documents in response to certain of Plaintiff's discovery requests because those requests seek broad categories of documents that are only, at best, marginally relevant to Unum's alleged bias.

### i. Requests Concerning the Training and Credentials of Unum Decision Makers

Smith RFP Nos. 1, 2, and 10 seek information relating to the training and credentials of the Unum Decision Makers.  (Smith RFP at 4-5.)  Plaintiff argues, among other things, that discovery of their training will illustrate whether the Unum Decision Makers were adequately competent to assess the claim and whether there was any bias instilled through their training. (Smith Mem. 13.)

District courts have been reluctant to grant discovery concerning the underlying merits of an administrative determination insofar as those merits are not relevant to issues of bias.  In other words, "the reasonableness of the administrator's decision is not an issue that courts will permit evidence beyond the administrative record."  *Paris-Absalom v. Aetna Life Ins. Co.*, No. 11 Civ. 0610 (RRM) (MDG), 2012 WL 4086744, at *2 (E.D.N.Y. Sept. 17, 2012) (citing *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 174 (2d Cir.2001); *McDonnell v. First Unum Life Ins. Co.*, No. 10 Civ. 08140 (RPP), 2011 WL 5301588, at *3 (S.D.N.Y.2011); *Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y.2008)).  Other courts have ordered discovery regarding operating procedures and guidelines insofar as those documents may demonstrate underlying bias in claim determination.  *See, e.g.*, *Weinberg v. Unum Life Ins. Co. of Am.*, No. 17 Civ 8976 (RA) (HBP), 2018 WL 5801056, at *3 (S.D.N.Y. Nov. 6, 2018) (granting discovery concerning

qualifications of medical reviewers because "his or her experience, specialties and board certifications are all relevant"); *Kruk v. Metro. Life Ins. Co.*, No. 07 Civ. 01533 (CSH), 2009 WL 1481543, at *6 (D. Conn. May 26, 2009) (granting discovery of any "statement or policy or guidance with respect to the plan [and] concerning the denied treatment option of benefit for the claimant's diagnosis"); *Cannon v. Unum Life Ins. Co. of Am.*, 219 F.R.D. 211, 214 (D. Me. 2004) ("Obviously, if [the administrator] has internal memoranda or policies that instruct claim handlers how to apply the [policy] limitation[s], such materials are relevant to the question of whether [the administrator] acted arbitrarily and capriciously in connection with its denial of [plaintiff's] claim.").

Certain of the training materials sought by Plaintiff in Smith RFP Nos. 1 and 2 may help demonstrate (or refute the existence of) bias in Unum's claim determinations insofar as they contain instructions to Unum employees on how to interpret terms of the Unum Policy at issue in this case.  For example, the Unum Policy states that monthly earnings "includes income actually received from bonuses" and that bonuses "will be averaged for the lesser of" "the prior calendar year's 12 month period of your employment with your Employer just prior to the date of disability begins" or "the period of actual employment with your Employer."  (Unum Policy at FUL-POL-LTD-000018.)  This provision grants Unum the ability to calculate the bonus in a *lesser* amount in order to obtain a lower calculation of monthly income, which in turn would mean that Unum would pay less in LTD benefits.  Documents providing instruction on this provision may be relevant to issues of bias insofar as it may demonstrate whether Unum employees are advised to calculate monthly income based upon bonuses obtained during "the period of actual employment" even where it might result in a finding that a LTD claimant did not incur a 20% reduction in salary (for the purposes of defining the date of disability).

15

The Court concludes that the appropriate balance to strike here is to order Unum to produce sufficient documents to establish the training, protocols, manuals, or guidelines[2] that are applicable to the denial of Plaintiff's LTD claim, to the extent they exist, in response to Smith RFP Nos. 1 and 2.  In other words, the training materials are only discoverable if they reflect how Unum determines a claimant's date of disability, gross income, or interprets any of the other provisions in the Unum Policy cited by Unum in the June Letter or October Letter.  These materials are also only relevant, and discoverable, to the extent that these materials were provided to the Unum Decision Makers.

On the other hand, Smith RFP No. 10—*i.e.*, his request for the resumes of the Unum Decision Makers—does not seek the production of documents that would support Plaintiff's allegations of bias raised in the Motion to Compel.  As Unum argues, "[t]his is discovery into the merits of the claim determination, not discovery seeking evidence of bias."  (Unum Opp. 14.)  The Court agrees.  At best, the resumes will further develop the record as to whether the Unum Decision Makers had extensive experience in their chosen profession.  Whether they were novices or masters of handling LTD claims is not relevant to the existence of bias.  Smith RFP No. 10 seeks material outside the scope of permissible discovery in ERISA cases insofar as the resumes are only relevant to the reasonableness of Unum's decision.  *See, e.g.*, *Paris-Absalom*, 2012 WL 4086744, at *2.

Accordingly, Plaintiff's Motion to Compel is DENIED to the extent it seeks the production of documents in response to Smith RFP No. 10 and is GRANTED to the extent it

---

[2]     Plaintiff does not define "training materials" in the Smith RFP.  (*See* Smith RFP.)  For the purposes of producing responsive documents, Unum should read this to include materials such as guidelines, manuals (*e.g.*, the one it already provided in response to Smith RFP No. 1), and PowerPoint presentations used during in-person or video training sessions or seminars provided to Unum employees.  In the interest of avoiding discovery that is not proportionate to the needs of this case, Unum does not need to produce email communications in which the sender provides guidance to one of the Unum Decision Makers.

seeks the production of documents in response to Smith RFP Nos. 1 and 2, but only within the limited scope identified above.

### ii.       Requests Concerning the Financial Compensation of Unum Decision Makers

Smith RFP Nos. 4, 5, and 7 seek documents concerning economic incentives that may have motivated the Unum Decision Makers.  Plaintiff argues that this discovery is necessary because "[i]f Unum's decision makers have high rates of denials and are being paid bonuses or given other incentives, then it is significant evidence of bias."  (Smith Mem. 14.)  While Unum maintains that no additional discovery is required, it did not specifically refute whether documents concerning financial compensation are discoverable.  (*See* Unum Opp. 13-16 (only arguing against producing documents in response to Smith RFP Nos. 1, 2, 3, 6, 9, and 11).)

District courts have frequently concluded that similar discovery requests—*i.e.*, discovery requests geared towards assessing potential financial motivations of individuals responsible for assessing the merits of LTD claims—are relevant as to potential bias and thus discoverable.  For example, in *N'Diaye v. Metro. Life Ins. Co.*, the district court concluded that "plaintiff is entitled to additional discovery from [claim administrator] itself concerning its compensation arrangements with the [medical reviewers]."   No. 17 Civ. 4260 (GBD) (BCM), 2018 WL 2316335, at *11 (S.D.N.Y. May 8, 2018).  Likewise, the district court in *Hogan-Cross v. Metropolitan Life Ins. Co.*, concluded that "[t]he bases for and amounts of compensation paid to employees . . . involved in plaintiff's benefit termination itself could prove relevant to plaintiff's claim."  568 F. Supp. 2d 410, 414 (S.D.N.Y. 2008); *see also Samedy v. First Unum Life Ins. Co. of Am.*, No. 05 Civ. 1431 (CBA) (KAM), 2006 WL 624889, at *3 (E.D.N.Y. Mar. 10, 2006) (permitting plaintiff to take discovery on "possible economic incentives offered by defendant that could potentially influence the claims handling process").

In the instant matter, Smith RFP Nos. 4, 5, and 7 are focused on a properly discoverable subject matter—*i.e.*, potential financial incentives that motivated the Unum Decision Makers—but are nonetheless overbroad.  For example, in Smith RFP No. 7, Plaintiff seeks "Financial penalties imposed by Unum on LTD claim decision makers for inaccurate decision making.  Any documents concerning such matter, if any, in effect from January 1, 2015 to date."  (Smith RFP at 4.)  In short, Plaintiff is seeking information regarding the compensation of numerous Unum employees besides the Unum Decision Makers that were responsible for denying Plaintiff's LTD claim.  Rather than burden Unum with reviewing the performance evaluations of each of its employees responsible for evaluating LTD claims, the Court instead orders Unum to produce sufficient documents to establish: (1) whether and how Unum provides financial incentives and disincentives to its employees responsible for making LTD claim determinations; and (2) whether, and in what amount, Unum Decision Makers received financial incentives, disincentives, or performance based bonuses.

Accordingly, Plaintiff's Motion to Compel is GRANTED to the extent it seeks the production of documents in response to Smith RFP Nos. 4, 5, and 7 within the scope of discovery permitted in this opinion.

### iii.  Requests Concerning the Performance Evaluations of, Lawsuits Against, and Statistical Denial Rates of, Unum Decision Makers

In Smith RFP Nos. 6, 8, and 9, Plaintiff seeks documents concerning the performance of the Unum Decision Makers, outside of the context of Plaintiff's own LTD claim.  For example, Plaintiff seeks "[p]erformance evaluations of [the Unum Decision Makers]."  (Smith RFP at 4.) He argues that "[i]f the evaluations disclosed any history of inaccurate or biased decision making, that is relevant."  (Smith Mem. at 15.)   Similarly, in Smith RFP No. 8, Plaintiff seeks "[o]ther lawsuits involving LTD claims in which it was alleged that Hyde, Labonte or Phillips

rendered inaccurate, improper and/or biased decisions.  Provide a list or documents showing the case name, court and docket number of all such cases."  (Smith RFP at 5.)  Plaintiff argues that this information is discoverable because "[i]f evidence exists that Unum's decision makers in this case were previously adjudged or accused of bias or inaccurate decision making, then that would be relevant and discoverable."  (Smith Mem. at 15.)  Likewise, in Smith RFP No. 9, Plaintiff seeks "[t]he approval/termination rates on LTD claims handled or administered by Hyde and Labonte and administrative appeals handled by Phillips.  Documents that show or include the foregoing information."  (Smith RFP at 5.)  Plaintiff argues that this information is discoverable because "actions by Unum's decision makers in other cases is *some* evidence of bias" and the district court in *Hogan-Cross*, 568 F. Supp. 2d 410, ordered discovery of approval and termination rate discovery.  (Smith Mem. at 15.)

None of the aforementioned requests seek discovery directly related to the denial of Plaintiff's LTD claim.  Instead, documents produced in response to these requests would result in the discovery that is barely relevant to any alleged bias, as Unum argues.  (*See* Unum Opp. 16.) For example, with respect to the approval or denial rates of the Unum Decision Makers, a bare denial rate does "not prove bias or conflict of interest," because Plaintiff would also "have to show that each of those decisions was unreasonable based on the evidence in each file." *Reichard v. United of Omaha Life Ins. Co.*, 805 Fed. App'x 111. 116 (3d Cir. 2020); *see also Hughes v. Hartford Life & Accident Ins. Co.*, No. 19 Civ. 01611 (JAM), 2020 WL 2615531, at *9 (D. Conn. May 22, 2020) ("[B]are numbers or percentages of claim denials are meaningless without additional context."); *Rickaby v. Hartford Life & Acc. Ins. Co.*, No. 15 Civ. 00813 (WYD) (NYW), 2016 WL 1597589, at *3 (D. Colo. Apr. 21, 2016) (claim denial rate, on its own, is not "probative of any bias or lack thereof;" "a simple tally of the number of grants and

denials would lack meaning, particularly where there is no information regarding whether the denials were wrongly decided"); *Whalen v. Standard Ins. Co.*, No. 08 Civ. 0878 (DOC), 2010 WL 346715, at *2 (C.D. Cal. Jan. 14, 2010) ("A simple mathematical proportion of decisions in which each doctor denies benefits is of no relevance unless it can also be shown that those denials were wrongly decided.") (citing *Dilley v. Metropolitan Life Ins. Co.*, 256 F.R.D. 643, 645 (N.D.Cal.2009)).

This same logic forecloses discovery of performance evaluations of, and lawsuits brought against, the Unum Decision Makers.  Even assuming that they received negative performance evaluations and/or were the subject of past lawsuits, Plaintiff would still need to prove that the performance evaluation, or lawsuit, was meritorious.  Even then, responsive documents would not be relevant *in this case* insofar as the performance flaws evidenced in the negative evaluation or lawsuit are unconnected to Unum's denial of Plaintiff's LTD claim.

Accordingly, Plaintiff's Motion to Compel is DENIED to the extent it seeks the production of documents in response to Smith RFP Nos. 6, 8, and 9.

### iv.   Request for All Communications Concerning Plaintiff

In Smith RFP No. 11, Plaintiff seeks "[a]ll communications between Unum and MHR Fund Management, LLC or Prestige Employee Administrators, Inc. or any of their employees or agents concerning the plaintiff.  All documents, if any, of such kind that may exist which are not in the claims and appeal files that You have already disclosed herein."  (Smith RFP at 5.)  In support of this discovery, Plaintiff speculates that Unum may have requested Prestige to tell Plaintiff not to file his claim until he was terminated.  (Smith Mem. 16.)  In response, Unum represents that "[a]ny requested communications between Unum, Prestige, and MHR relating to plaintiff's claim are contained within the record, and this constitutes a full and complete response to plaintiff's request."  (Unum Opp. 16.)

District courts have previously rejected similarly broad requests for communications concerning or referencing a plaintiff where they were sought in order to evaluate the completeness of the administrative record. *See, e.g.*, *Hughes*, 2020 WL 2615531, at *7 (finding that request seeking "all documents or ESI not included in the claim file . . . and which refer to the Plaintiff" was "exactly the sort of discovery request that courts have rejected when unaccompanied by any factual basis for suspecting that the record is incomplete"); *Chau v. Hartford Life Ins. Co.*, No. 14 Civ. 8484 (GHW), 2016 WL 7238956, at *5 (S.D.N.Y. Dec. 13, 2016) (rejecting discovery requests to obtain "communications related to [plaintiff]" because plaintiff "does not allege that these . . . communications were considered by Hartford in terminating her benefits, nor does she point to any evidence in the record suggesting that they were"). Plaintiff has not made any factual showing that the administrative record is incomplete, and thus there is no basis to require the production of these documents.

Accordingly, Plaintiff's Motion to Compel is DENIED to the extent he seeks the production of documents in response to Smith RFP No. 11.

### v. Categorical Requests Related to Unum's Policies, Standards, and Measures to Reduce Bias.

In Smith RFP Nos. 3 and 12, Plaintiff seeks broad categorical discovery regarding policies and actions of Unum that are not directly related to the LTD claim denial at issue in this case. For example, Smith RFP No. 3 seeks "all documents concerning" 32 categories of "standards, policies, procedures, criteria, training materials, practice aids, examples, interpretations, guidelines and available reference materials." (Smith RFP at 3-4.) These categories include, among other things, "lawsuits for LTD benefits." (*Id.* at 4.) Likewise, in Smith RFP No. 12, Plaintiff seeks "[d]ocuments pertaining to any steps that Unum may have taken to reduce potential bias and/or to promote accuracy on the part of its decision makers on

LTD claims." (Smith RFP at 5.) Plaintiff explains that discovery of Smith RFP No. 3 is necessary because it might lead to evidence relating to bias if "Unum's decision makers in this case did not use or claim that they were not aware of Unum's standards and criteria." (Smith Mem. 14.) By contrast, Plaintiff offers no basis in his moving papers for why RFP No. 12 is necessary. (*See id.* at 13-16 (arguing why each specific request is relevant except for Smith RFP No. 12).)

Both requests are either overbroad, to the extent they seek the discovery of information that is not relevant to whether there was bias in Unum's handling of Plaintiff's LTD claim, or duplicative of discovery Unum is ordered to produce in response to Smith RFP Nos. 1 and 2. RFP No. 12 seeks material concerning measures taken by Unum to promote accuracy in LTD claims without regard to whether that measure played any role in the determination to deny Plaintiff's benefits claim – *e.g.*, the request may be read to seek documents concerning measures taken by Unum to prevent conflicts in retaining medical consultants to assess disability claims. Likewise, Smith RFP No. 3 may be read to seek all reference materials relating to numerous topics even if those reference materials were not provided to, or consulted by, the Unum Decision Makers. To the extent either request is narrowly interpreted to seek material directly relevant to this case—*e.g.*, policies, procedures, or standards provided to the Unum Decision Makers—they are duplicative of Smith RFP Nos. 1 and 2.

Accordingly, Plaintiff's Motion to Compel is DENIED to the extent is seeks to compel the production of documents in response to Smith RFP Nos. 3 and 12.

### vi.    Plaintiff's Deposition Notices

Based upon Unum's undisputed structural conflict of interest and Plaintiff's adequate showing, for the purposes of discovery, that this conflict of interest may have influenced Unum's denial of Plaintiff's LTD claim, a deposition is warranted in this case. To this end, as in *Joyner*,

discovery is limited to "a deposition of a representative of [Unum] pursuant to [] Fed. R. Civ. P. 30(b)(6), without prejudice to plaintiff later seeking to depose other witnesses." 837 F. Supp. 2d at 243; *see also Durham*, 890 F. Supp. 2d at 396–98 (allowing only a Rule 30(b)(6) deposition and plaintiff's "reasonable document requests"); *Burgio*, 253 F.R.D. at 235 (permitting plaintiff to "serve a Rule 30(b)(6) notice to depose an appropriate individual regarding the identities of the individuals who made the decision to deny Plaintiff LTD benefits as well as the criteria used by Defendant in making that decision and in determining Plaintiff's appeal"). In advance of this Rule 30(b)(6) deposition, Plaintiff and Unum are instructed to be mindful of the scope of discovery permitted in this opinion, and to attempt to resolve any disputes that might arise regarding the appropriate scope of deposition topics.

Accordingly, Plaintiff's Motion to Compel is DENIED, without prejudice, to the extent it seeks the depositions of the Unum Decision Makers, but Plaintiff is permitted to depose a representative of Unum pursuant to Rule 30(b)(6) within sixty (60) days from the entry of this opinion.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED to the extent it seeks the production of documents in response to Smith RFP Nos. 1, 2, 4, 5, and 7 (within the scope of discovery permitted in this opinion), and Unum is ordered to produce a representative for a Rule 30(b)(6) deposition, to be completed no later than 60 days after this opinion is entered. Plaintiff's Motion to Compel is DENIED to the extent it seeks: (1) depositions of the Unum Decision Makers, without prejudice, and (2) the production of documents in response to Smith RFP Nos. 3, 6, 8, 9, 10, 11, and 12, with prejudice. The parties are advised that the Court intends to refer pretrial

discovery to Magistrate Judge Judith C. McCarthy.  After this matter has been referred, the parties are directed to contact the Honorable Judith C. McCarthy to schedule a pretrial conference.

The Court respectfully directs the Clerk of Court to terminate the motion at ECF No. 30.

Dated:    October 21, 2020                               SO ORDERED:
          White Plains, New York

_____

NELSON S. ROMÁN
United States District Judge